UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DOROTHY A. FARMER,
on behalf of T.AP., a minor,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:09-cv-631
Hon. Gordon J. Quist

_____/

**REPORT AND RECOMMENDATION**

Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for social security income (SSI).

Plaintiff was born on June 1, 1999 (AR 18).[2] Plaintiff's application for SSI was filed on December 9, 2004 (AR 15). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) held a hearing, reviewed plaintiff's claim *de novo*, and entered a decision denying the claim on September 4, 2008 (AR 15-26).[3] This decision, which was later approved by the

---

[1] Although Dorothy A. Farmer is the nominal plaintiff, the term "plaintiff" herein shall refer to her minor daughter T.A.P., the real party in interest. The court notes that the administrative law judge's decision refers to the minor, T.A.P., as "the claimant."

[2] Citations to the administrative record will be referenced as (AR "page #").

[3] The court notes that plaintiff had two hearings. Plaintiff's mother was unrepresented at the first hearing held on October 5, 2007 (AR 326). The hearing was re-scheduled so that plaintiff's mother could secure an attorney (AR 326-36).

Appeals Council, has become the final decision of the Commissioner and is now before the court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled

on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). An individual under the age of 18 shall be considered disabled if the child

> has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

> There is a three step process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003).

The regulations provide separate tests for the three determinations at step three of the process, whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments. 20 C.F.R. § 416.924(d). First, "[i]n order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a)." *Elam*, 348 F.3d at 125. "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Id.* Second, an impairment is "medically equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Third, an impairment may be functionally equivalent to a listed impairment. The "functional equivalence" of a listed impairment is defined as an impairment of listing-level severity, which requires either "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six relevant domains of functioning are: acquiring and using information; attending and completing tasks;

interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

## II. ALJ'S DECISION

Following the three steps, the ALJ first found that plaintiff has not engaged in substantial gainful activity at an time relevant to the decision (AR 18). The ALJ then found that plaintiff suffered severe impairments of: mild intellectual limitations; speech and language delay; and mild enuresis[4] (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets, medically equals or functionally equals on of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18-24). In reaching this determination, the ALJ found that plaintiff's impairments had not resulted in marked limitations in two domains or severe limitations in one domain (AR 20-26). Specifically, the ALJ found: that plaintiff had "less than marked limitations" in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being; and, that plaintiff had "no limitation" in moving about and manipulating objects (AR 20-26). These limitations were those as identified by the medical expert at the hearing (AR 363-64). The ALJ concluded that plaintiff was not under a "disability" as defined in the Social Security Act at any time since December 9, 2004, the date the application was filed (AR 26).

## III. ANALYSIS

Plaintiff has failed to comply with the Court's Order directing filing of briefs, which requires that "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific

---

[4] Enuresis is defined as "involuntary discharge of urine after the age at which urinary control should have been achieved; often used alone with specific reference to involuntary discharge of urine occurring during sleep at night (*bed-wetting*; *nocturnal enuresis*). *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 562.

4

errors of fact or law upon which plaintiff seeks reversal or remand." *See* docket no. 8. After reviewing plaintiff's brief, the court finds three issues: (1) that the ALJ should have granted her request for a consultative examination to fully address her claim of attention deficit hyperactivity disorder (ADHD); (2) that the ALJ should have found "marked" or "severe" limitations in reviewing the six domains; and (3) that the ALJ failed to properly review the credibility of plaintiff's symptoms.

### A. ADHD and consultative examination

At the time of the hearing held on April 23, 2008, plaintiff was in the third grade (AR 343). Plaintiff's mother testified that plaintiff has a number of behavioral problems, but has not been checked for ADHD at the school and she has not asked plaintiff's teachers about the condition (AR 344-45). Plaintiff's mother further testified that plaintiff's two brothers and a sister had ADHD (AR 344-45). In a pre-hearing statement of facts, counsel requested a consultative examination to assess plaintiff's alleged ADHD.

As an initial matter, the ALJ found that there was no evidence that plaintiff suffered from ADHD:

> There is no medical evidence of record that the claimant has attention deficit hyperactivity disorder. The claimant's teacher reported that she can work independently of teacher supervision. Exhibit 13E. No educational or treating source has referenced this condition. As there is no corroborating evidence that the claimant has attention deficit hyperactivity disorder, it is deemed to be a non-medically determinable impairment.

(AR 18). After reviewing the record, and observing that "no educational or treating source has referenced this condition," the ALJ declined to order a consultative examination (AR 18).

The ALJ agreed with the medical expert at the hearing, Dr. Andert, a licensed psychologist, who "testified that there was no clear evidence in the file to substantiate attention

deficit hyperactivity disorder" (AR 18). After acknowledging that plaintiff's medical file did not include a diagnosis of ADHD, Dr. Andert testified that there was no clinical data to support this diagnosis:

> Q: Are there any indications in the file that would lead you to make that diagnosis or to consider, consider it?
>
> A. There really is not any clinical data that I think would support that as a separate impairment at this time. The school activities questionnaire, Exhibit 13E, I'm not sure who completed that because it's not signed or dated, but did not [sic] indicate any attention problems on the claimant's part. Exhibit 9E is a teacher questionnaire which did suggest some mild attention issues.
>
> \* \* \*
>
> I think the testimony today would be the greatest indication of [sic] there may be some issues with regard to behavioral difficulties but it would be difficult to indicate whether those might be more oppositional behavior or as a result of the ADHD or some type of impairment like that. But I didn't find any clinical data that would support an additional disorder diagnosis.

(AR 361). Dr. Andert further testified that the subjective observation of a teacher indicates that "there may be some attention or behavioral problems that are interfering with task's [sic] completion," but "[i]t really is not sufficient to be able to come to any conclusion as to the basis for that or even the severity of it I don't think" (AR 362).

The ALJ's determination that plaintiff did not suffer from ADHD is supported by substantial evidence. There was no diagnosis of ADHD and no clinical data to support such a diagnosis. Even if plaintiff suffered from ADHD, or a similar behavioral disorder, Dr. Andert characterized such behavioral difficulties as "some mild attention issues." The ALJ can rely on the opinions expressed by a non-examining medical expert at the hearing. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("[t]he ALJ could properly rely, in this case, on the testimony of Drs.

6

Cox and Schweid, the non-examining medical expert physicians, in order to make sense of the record").

An ALJ has the discretion to determine whether further evidence, such as additional examinations are necessary. *Hayes v. Commissioner of Social Security*, 357 Fed. Appx. 672, 675 (6th Cir. 2009), citing 20 C.F.R. §§ 404.1517 and 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests"). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 214 (6th Cir. 1986), citing 20 C.F.R. § 416.917(a). In other words, the regulations "do[] not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (internal quotation marks omitted) (emphasis in original). *See also, Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) ("[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination").

In this case, there was no basis to order an additional consultative examination at government expense. The record was sufficient to enable the ALJ to reach his decision. Upon questioning by plaintiff's counsel, Dr. Andert testified that he saw "no harm" in having plaintiff evaluated for ADHD (AR 367). While any parent would like to have free additional medical testing performed of their children, Dr. Andert's testimony does not form the basis for additional testing in the context of a Social Security Appeal. In this regard, the doctor testified that plaintiff had only

7

"mild attention issues" and that the record was unclear as to defining "what the behavioral issues are, if there are some present" (AR 367). Accordingly, substantial evidence supports the ALJ's decision that plaintiff did not sufer from disabling limitations from ADHD. In addition, the ALJ properly exercised his discretion in denying counsel's request for a consultative evaluation regarding ADHD.

### B. Marked or severe limitations in the six domains

Based largely upon the testimony of Dr. Andert given at the hearing, the ALJ found that plaintiff's limitations on the six domains did not meet the requirements for a disability. As previously discussed, plaintiff had, at most, "less than marked limitations." About two months after the administrative hearing, plaintiff's counsel sent a letter to Dr. Andert, in which he presented additional evidence in the form of a letter from plaintiff's father, Calvin Pullium, dated May 29, 2008 (AR 212, 322-23). Mr. Pullium, who could not attend the hearing due to his incarceration, outlined her problems as follows: inability to get along with others; wetting her bed; lack of ability to appreciate dangerous situations; caring for herself; needed constant supervision; and has difficulty concentrating and completing tasks (AR 212).

Although plaintiff does not live with Mr. Pullium, he sees her on a daily basis (AR 212). Mr. Pullium gave the following examples of plaintiff's behavior: she puts things in her mouth that should not be there; runs into the street without looking for cars; swings from the balcony of the house; runs around with scissors in her hand; screams and kicks in the store; throws tantrums; fights with her brothers and sisters constantly; is mean and aggressive; screams at her mother; will not dress, feed or bathe herself; will not tie her shoestrings; does not wipe herself after going to the toilet; has speech which is hard to understand; and wets in bed and at school (AR 212).

8

After reviewing this letter, Dr. Andert stated that assuming the accuracy of the father's description, he would change domain no. 5 (self-care) from "less than marked" to "marked" (AR 322). The doctor further stated that the other domains would remain the same (AR 322). With respect to domain no. 5, the ALJ accepted the testimony given by Dr. Anderts at the hearing (i.e., that plaintiff's self-care skills were less than marked due to deficient bathroom skills), rather than the revised opinion as set forth in response to the father's letter (AR 25). Plaintiff does not refer to any regulations or caselaw to support her assertion that the ALJ should have changed domains nos. 2, 3, 5 and 6 to "marked." Nor does plaintiff submit any authority to support her claim that the ALJ must adopt Dr. Andert's post-hearing revised (and qualified) opinion regarding domain no. 5. Even if the ALJ found that plaintiff had "marked" limitations in domain no. 5, this finding, in and of itself, does not mandate a finding of disability. Accordingly, the substantial evidence supports the ALJ's determination with respect to the six domains at step 3 of the sequential evaluation.

**C. The ALJ failed to properly review the credibility of plaintiff's symptoms**

Finally, plaintiff states that "the ALJ failed to give specific reasons for the finding on credibility" and contends that the decision should be reversed because "the ALJ determined without further explanation or analysis that '. . . the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not fully credible.' "Plaintiff's Brief at p. 5. Plaintiff's paragraph contesting credibility fails to discuss the record in this case.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th

9

Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). *See Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007) ("[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact").

In his decision, the ALJ reviewed plaintiff's medical records, school records, and the testimony of the plaintiff's mother and Dr. Anderts, and the letter written by plaintiff's father. While plaintiff's mother and father pointed out various behavioral concerns, the ALJ noted that no treating or education source has referenced such problems; that plaintiff's teacher said she had no problems playing cooperatively, asking appropriate permission, expressing anger, and taking turns (AR 20). In addition, plaintiff's mother previously stated that plaintiff gets along "very well" with her siblings (AR 20). Plaintiff's second grade teacher described her as very sociable, confident and independent (AR 20). Another teacher reported that plaintiff seeks attention appropriately, makes and keeps friends and respects adults in authority (AR 20). A state agency medical consultant noted that the then five-year-old plaintiff could be understood only 1/2 to 2/3rds of the time, but that a more recent speech evaluation assessed her as having normal receptive and expressive language skills and "mildly" delayed articulation skills (AR 20).

The credibility determination in this case involved an evaluation of statements made by plaintiff's mother and a short letter from her father. Contradictions exist between plaintiff's limitations as described by her parents and the other evidence, which included medical evidence and records from the school district. Under these circumstances, the ALJ could properly discount the limitations expressed by plaintiff's parents. There is no compelling reason present in this to disturb

the ALJ's credibility determination. Accordingly, substantial evidence supports the ALJ's determination.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: July 26, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).